GOLDSTEIN'S SURETIES (UNITED STATES v.). See Case No. 15,226.

GOLIAH, The (NELSON v.). See Case No. 10,106.

---

## Case No. 5,524.

GOLSON v. NIEHOFF.

[2 Biss 434; [1] 5 N. B. R. 56.]

District Court, N. D. Illinois. Jan., 1871.

NOTICE OF INSOLVENCY — WHAT CONSTITUTES—PREFERENCE—JUDGMENT BY CONFESSION—WHEN A PREFERENCE.

1. The simple fact that a man doing a large business obtains renewals of his commercial paper or pays under special circumstances a large discount, is not notice of insolvency to a

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

creditor, it being shown that at that time similar commercial paper was selling at equal rates in the market.

2. Preference upon a judgment note is obtained when the judgment is entered, not when the warrant of attorney is given.

[Approved in Hood v. Kasper, Case No. 6,-664.]

3. If at the time of the entry of judgment the creditor had knowledge of his debtor's insolvency, or of such facts as to make it reasonable to believe him insolvent, the collection of a debt or entry of judgment and issue of execution is a preference under the act.

4. The fact that the note and warrant of attorney were given for a bona fide debt, and that the creditor at that time had no knowledge of the debtor's insolvency, does not sustain such subsequent judgment.

5. Circumstances stated which are sufficient notice to a creditor of his debtor's insolvency.

This was a summary proceeding by petition by the trustees of the estate of Adam Baierle, bankrupt, against Conrad L. Niehoff and Gustavus Troost to recover money received by them on an execution sale of property of the bankrupt. The petition sets forth in substance, that in January, 1869, said bankrupt borrowed of the respondents, Niehoff & Co., five thousand dollars, for which he gave his promissory note, with one Hoffman as surety, payable to said Niehoff & Co. in four months; that said indebtedness was extended by agreement from time to time between the parties until the 12th of November, 1869, when Baierle paid respondents one thousand dollars, and obtained a further extension of sixty days on the remaining $4,000; and on the 12th of January, 1870, the further sum of one thousand dollars was paid to respondents, and an extension for sixty days given for the remaining three thousand dollars; that on the 9th of October, 1869, Baierle borrowed of respondents the further sum of $1,000, for which he gave his note, with one Grater as surety, payable to respondents in thirty days, to which said note was attached a warrant to confess judgment, and which note was, on the 12th of November, 1869, extended for the term of sixty days; and on the 12th of January, 1870, a further extension of sixty days was obtained; that for all these loans and extensions large discounts were paid by the bankrupt, amounting to at least two and a half per cent. per month; that at the time said extensions were obtained said bankrupt was insolvent, and that the fact of his not paying said notes at maturity, and his paying such extortionate and usurious rates of discounts or interest, were sufficient to put said respondents on inquiry, and give reasonable cause to believe him insolvent; that on the 12th day of February, 1870, said Baierle was guilty of an act of bankruptcy, and on the 15th day of February, 1870, a petition was filed in this court to have him adjudged a bankrupt, and that in pursuance of said petition he afterwards was duly adjudicated a bankrupt; that on said 15th day of February, respondents caused a judgment to be entered in the su-

perior court of Chicago by virtue of the warrant of attorney attached to said one thousand dollar note, upon which judgment execution was issued and levied on the same day upon certain personal property of said bankrupt, and the property so levied upon was subsequently sold on said execution, and said judgment, and costs, amounting in all to $1,-068.72 was fully satisfied thereby. The petition also charges that at the time of the entry of said judgment and the issue of execution, levy and satisfaction thereof, said respondents knew of Baierle's insolvency, and that by said judgment and levy said respondents obtained a preference over the other creditors of said bankrupt contrary to the tenor and intent of the bankrupt act [of 1867 (14 Stat. 517)]. The petitioners then pray that said Niehoff & Co. may be ordered and adjudged to pay to them as such trustees, all said sums of money so wrongfully received and collected by them from said Baierle.

The respondents by their answer admit the making of said loan to said Baierle, and the receipt of said notes therefor, and the subsequent payment of said sums of $1,000 in November and January to apply on the first mentioned note, and the several extensions of said indebtedness, but they deny the extension of said $1,000 on the 12th of January, 1870, for sixty days, but aver that the same was only extended for the term of thirty days; they also denied all knowledge of Baierle's insolvency, and of any facts tending to apprise them of such insolvency at the time said payments were made and extensions granted. They also admit the entry of said judgment, issue of execution, levy and satisfaction thereof, but deny all knowledge of Baierle's insolvency and acts of bankruptcy at the time said judgment was entered. It was also set forth in the answer, and proved on the trial, that after the entry of said judgment said Baierle made his motion in the superior court to set aside said judgment, on the ground that said note had been extended sixty days from the 12th of January, 1870, and consequently was not due at the time said judgment was entered thereon, and that said motion was, after due consideration, overruled by said court. The only question, except as to the time for which said $1,000 note was extended on the 12th of January, upon which proof was offered at the trial, was in regard to the knowledge or notice which Niehoff & Co. had of Baierle's insolvency during the progress of the transactions detailed. The petitioners relied mainly upon the facts of the extensions obtained by Baierle, and the high rate of interest or discount paid to establish or raise a presumption of knowledge of said insolvency, and the preference by the receipt of the discount, and the two sums of $1,000 each, which were paid in November and January on the $5,000 note; while on the part of the respondents it was proved by several business men who had transactions with Baierle up to a few days before the commission of the act of bank-

ruptcy, that he was engaged in extensive operations in this city as a distiller, rectifier and saloon keeper, and was in unquestioned credit with bankers and merchants; that he had a large amount of property in his hands, and was apparently in prosperous circumstances. It was also proved that at the time Baierle paid the $1,000 and obtained the extension on the $5,000 note in November, he explained to respondents that one Golson had agreed to go into partnership with him and furnish money for the business on which he depended, but that Golson changed his mind, and at the time of the payment of $1,000 in January Baierle stated that the market for highwines was dull, and he preferred to hold them awhile for better prices, and that he was feeding cattle at his distillery which would be better ready for market and more in demand in sixty days.

Adolph Moses, for petitioners.
Hoyne, Horton & Hoyne, for respondents.

BLODGETT, District Judge. In the light of this evidence I do not think respondents chargeable with knowledge of Baierle's insolvency at the time of these extensions, nor with such notice of facts touching his probable insolvency, as should be held sufficient to put a cautious man on inquiry. Baierle's credit was good among those with whom he dealt during all these transactions; that a man engaged in extensive commercial transactions should need extensions or renewals of his commercial paper is no unusual circumstance, and the fact that two responsible citizens were willing to answer as sureties for him shows the estimate in which he was held by them in regard to solvency.

The reasons, too, which he assigned for asking the two last extensions were natural, and there is no dispute as to the existence of those reasons; in fact, a failure in an arrangement for partnership in so complicated a business as Baierle was then carrying on might make an extension necessary for the most solvent man, while the condition of the market for the product of his manufacturing business was certainly an adequate reason for continuing his loan in January, rather than to have sold the highwines and beef at a sacrifice, to pay them.

Again, our examination of the proofs of debt against the estate of the bankrupt shows that considerable more than half of those debts were contracted between the time these extensions were obtained and the acts of bankruptcy. This fact proves conclusively that Baierle was, at this time, in the full enjoyment of unlimited credit in the community with whom he dealt and where he resided. The proof shows that the rate of discount paid was not unusual at the time, but that, on the contrary, the best commercial paper in this city was then in the market at those rates, thus rebutting any presumption or inference of insolvency from the payment of

the discount alleged. I think, therefore, that the petitioners' proof fails in a most essential particular, as to the claim to recover back the $2,000, and sums paid by way of discount or interest.

In regard to the preference obtained by the entry and collection of the judgment on the $1,000 note, the proof is that on or about the 12th day of February, 1870, Baierle was missing, and various rumors were afloat in the community in regard to him—by some he was supposed to have been murdered, while others supposed he had absconded with a large sum of money for the purpose of defrauding his creditors—and these rumors were to some extent the subject of articles and notices in the newspapers published in this city. Niehoff, one of the respondents, testifies that he heard something of these rumors, but did not hear that Baierle was insolvent; that Hoffman, who was surety on one of the notes, talked with him as to what steps he, Niehoff, would take to protect the sureties on the paper he held, and it was finally concluded that judgment could be entered on the one thousand dollar note, which was accordingly done on the morning of the 15th of February, about 10 o'clock, and the levy made on the execution the same morning, and before the petition in bankruptcy was filed. It is true Niehoff denies all actual knowledge or information, at the time the judgment was entered, of Baierle's insolvency, but it is clear, from the evidence, that he knew something of the extraordinary rumors afloat in regard to Baierle's being missing, or having absconded; and so much discussion of his affairs seems to have transpired as to lead to the conclusion that the safety of the surety on the note, if not the interest of Niehoff & Co., required that the power to enter judgment on the warrant of attorney should be called into execution. Niehoff says himself, in his evidence, that at the time of the entry of the judgment he "thought something was wrong with Baierle." He evidently did not suppose him dead, as one rumor had it, for he would not have entered judgment against a dead man, and the "something wrong" evidently referred to Baierle's pecuniary affairs, or there would not have been this consultation with sureties, and final conclusion of counsel to enter up a judgment on this note. The proof also shows that Troost, who is a member of the firm of Niehoff & Co., participated in these discussions in regard to Baierle's absence, and the course to be pursued in order to secure the debts the firm held against him, and it would seem from the proof that this judgment was entered after consultation between Troost and Grater, the surety.

Within a few hours of the entry of this judgment, the records of this court, of which all persons in the district are bound to take notice, contained ample evidence of Baierle's insolvency and acts of bankruptcy, and from the time of the filing of the petition in bank-

ruptcy the respondents are chargeable with full knowledge of Baierle's insolvency. At the time when the satisfaction of this judgment was actually obtained by the sale of the property levied upon, Niehoff & Co. were certainly informed of all the facts necessary to advise them of Baierle's insolvent condition. The 35th and 39th sections of the bankrupt act make void all transactions by which one creditor, with the knowledge of the debtor's insolvency, and with the assent of the debtor, obtains a preference as against the other creditors, and the question arises as to whether this is such a preference as is prohibited by these sections.

In considering these questions the first inquiry is as to when the preference by means of a judgment note is obtained—is it when the note, with a warrant of attorney to confess judgment, is executed and delivered? Clearly not, because the power lies dormant, and in mose cases secret, until it is executed by the entry of the judgment. Up to this time the warrant to confess judgment is only an evidence of the debt, and gives the creditor no lien, and, consequently, no preference. It may be of itself an act of bankruptcy, under the law, to give a warrant of attorney to confess judgment, but not necessarily a preference. The warrant of attorney, in fact, is only a means placed in the hands of a creditor by which he may, more promptly than other creditors, seize the property of the debtor on legal process, and only becomes dangerous when used to the detriment of other creditors. It would seem to follow, then, that if a creditor holding a warrant to confess a judgment against a debtor, causes the power thus entrusted to him to be exercised after he has notice of the debtor's insolvency, or has notice of such facts as make it reasonable to believe the debtor is insolvent, and takes his judgment and levies upon the property of the debtor with such knowledge or notice, he is guilty of intending a fraud upon the bankrupt act. The consequences of his acts are to secure a preference over other creditors, and if he obtains such preference with notice of the debtor's insolvency, he is liable to an action by the assignee for the recovery of the property thus obtained, or its value. The warrant of attorney is a continuing consent on the part of the debtor to the entry of the judgment by the creditor, and if when the creditor executes the power thus delegated, he knows the debtor to be insolvent, the judgment and execution under it is manifestly an act of bankruptcy, participated in by the creditor to such an extent as to make void all advantages obtained thereunder. It will not do to say that because the creditor had no knowledge of the debtor's insolvency at the time he obtained the warrant of attorney, and that the same was given to secure a bona fide debt, therefore all he does under the warrant of attorney must be sustained. As I said before, the warrant to confess judgment lies dormant until the creditor sees fit to act upon it, and whether his action shall result in such an unlawful preference as will make the creditor liable to the assignee depends upon the knowledge or information the creditor had in regard to the debtor's insolvency at the time he made his warrant of attorney operative. Applying these principles to the case before me, I think the proof shows Niehoff & Co., at the time they entered their judgment against Baierle, had knowledge of such facts as gave them reasonable cause to doubt Baierle's solvency, which is equivalent to having cause to believe him insolvent. They thought "something was wrong with him," and this, evidently, had reference to his pecuniary affairs, for the action in question was taken to save the surety, Grater, and perhaps partly in his interest. Baierle, it will be remembered, was missing on the 12th of February, 1870, which was Friday, and it can hardly be possible that, with the large number of creditors, and other persons who were more or less affected by the occurrence, there should not have been a comparison and discussion by those most interested, in regard to his financial embarrassment, which must have reached the ears of the respondents, and contributed to hasten their action upon this warrant of attorney.

I therefore conclude that the judgment entered in this case was entered at a time when the respondents had reasonable cause to believe the bankrupt insolvent, and therefore with intent to evade that provision of the bankrupt act which prohibits and makes void all preferences. Let there be a decree entered for the amount of the execution collected, with six per cent. interest.

Motion for new trial by respondent overruled by court.

NOTE. Consult In re Weeks [Case No. 17,-350]; In re Eldridge [Id. 4,330]; Campbell v. Traders' Nat. Bank [Id. 2,370]; and numerous authorities there cited.